UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

RICHARD DODD,

    Plaintiff,

v.

JOHN GALIPEAU *et al.*,

    Defendants.

CAUSE NO. 3:21-CV-799-DRL-MGG

OPINION AND ORDER

Richard Dodd, a prisoner without a lawyer, filed an amended complaint against ten defendants.[1] ECF 8. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Under 28 U.S.C. § 1915A, the court still must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Mr. Dodd alleges that he has endured various unconstitutional conditions of confinement while housed at Westville Correctional Facility. He further alleges that the response to the COVID-19 pandemic at Westville Correctional Facility was inadequate.

---

[1] Mr. Dodd did not use this court's prisoner complaint form for either his original complaint or his amended complaint, as required by N.D. Ind. L.R. 7-6. ECF 1; ECF 8. In the future, Mr. Dodd will be required to use the court's **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form.

The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008) (citations omitted). In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id.* (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding, hygiene materials, and sanitation, *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the court of appeals has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (internal citations and quotation marks omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (where inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

Mr. Dodd asserts that the Westville Correctional Facility is dilapidated, and its infrastructure is failing. Mr. Dodd has been housed in several different areas of the prison,

and he describes similarly poor conditions in each housing unit where he was assigned. According to the complaint, there are problems with the ventilation system, temperatures are not adequately controlled in either summer or winter, bathrooms have mold and mildew, there are insufficient restroom facilities, there is asbestos, the water is contaminated, there is second-hand smoke from inmates smoking prohibited substances, and there are mice, insects, and mosquitos.

Between December 7, 2020 and March 30, 2021, Mr. Dodd resided in 7 dorm. The windows in the dorm did not latch, and they would blow open. This caused freezing cold temperatures. The heat on the unit did not work. There was no hot water. When the temperature was low enough that guards should have been passing out extra blankets, they would fabricate the temperature readings so that they wouldn't be required to pass out the blankets. On one occasion when a guard recorded a temperature that was too low, Sgt. Vaughn and Sgt. Dew returned and aimed the temperature reader at some food that had just been removed from the microwave. That higher temperature was recorded instead. Mr. Dodd alleges that Lt. Bradford also manipulated temperature recordings to reflect warmer temperatures in the dorm. On one hot summer day, the temperature inside the dorm was 111 degrees. In summer, it is considerably hotter inside than outside, because the sun warms the building and there are no exhaust fans to move the hot air out of the dorm.

The air coming in the dorm originates from the basement, where inmates without proper credentials have allegedly partially removed asbestos. Mr. Dodd asserts that the

ventilation system has never been cleaned. Mr. Dodd says he has developed a cough and nasal and eye irritation that he did not have prior to his exposure to asbestos.

Mr. Dodd also describes a new drug that has become prevalent in the prison population: toon.[2] A substantial number of inmates are smoking it, and inmates who are not using it are exposed to it through second-hand smoke. Mr. Dodd suffers from asthma, and the second-hand smoke from this drug exacerbates his asthma.

Mr. Dodd is also concerned about the water. If water sits overnight, in the morning there is a cloudy brownish-red residue on the bottom of the cup. Whatever the cause, Mr. Dodd's doctor told him not to drink the water, but Mr. Dodd could not buy sufficient bottled water from commissary to avoid it. Mr. Dodd reports that the source of the water was changed, addressing this issue.[3] He remains concerned about possible harm from past exposure.

Mice are allegedly everywhere. Mr. Dodd finds feces from mice in the corners of his sack lunches. Sometimes there are holes in the bag. There are mice running all over the kitchen. He sees mice daily in his cell, and he has caught as many as twelve in a twenty-four-hour period in his room.

On March 30, 2021, Mr. Dodd was transferred to C2 dorm. His cell had no working light and was missing a windowpane approximately ten by twelve inches in size. There

---

[2] This appears to be a reference to synthetic marijuana or spice, sometimes called Tunechi. *See* https://www.dictionary.com/e/famous-people/tunechi/ (last visited October 31, 2022) ("Tunechi is also a slang term for synthetic marijuana, sometimes called spice or K2.").

[3] Mr. Dodd also believes lead has been used to seal leaky pipes instead of silver, although this allegation appears to be based on speculation.

was no working heat. It was very cold, and it snowed between April 18, 2021, and April 24, 2021. Mr. Dodd woke up to snow on the foot of his bed because of the broken window. He talked to Lt. Bradford, Warden Galipeau, and Captain Yancy. Mr. Dodd would stop them each time they walked past, but he felt they were blowing off his concerns. They repeatedly told Mr. Dodd they were working on it.

The bathroom in C2 serves approximately fifty inmates. There were five sinks. Two did not work. Of the remaining three, one had both cold and hot water but low water pressure, one had only cold water, and one had only hot water. There were three working toilets. Two were designated for urine, and one was designated for bowel movements. It's unclear how long Mr. Dodd was in C2 dorm, but he left and returned in November 2021. The conditions had not changed.

Around thanksgiving 2021, Mr. Dodd was moved to N-1. There were two working sinks and three working toilets. At the time he drafted his complaint, Mr. Dodd was in R dorm. There were three working toilets for more than fifty inmates.

While in C dorm, there was one shower head that functioned properly. But the water was way too hot: the temperature was set to 140 degrees and no cold water was hooked up. In the shower area, there was a twelve-inch by twelve-inch hole where an exhaust fan had been removed. The hole permitted rain, snow, sleet, insects, and an occasional bird to enter. Because there are not exhaust fans, mold and mildew grow in the showers, which aggravates Mr. Dodd's asthma. Cleaning chemicals are provided once a week. Mr. Dodd assert that, when the tile and grout are sprayed with the chemicals, small worms crawl out from the grout. The bathroom floor is always wet

because the pipes under the sinks leak. The steel window frames in the bathroom have rusted so badly that they cannot be cleaned.

None of the windows have screens. In the summer when the windows are opened, Mr. Dodd is bit by mosquitos multiple times each night. He worries about contracting West Nile Virus. Insects and birds are free to enter. There is no weather stripping on the windows. Some do not close. Others do not latch. The cold exacerbates Mr. Dodd's ankylosing spondylosis.[4] He has had to use water bottles warmed in the microwave to keep warm. In March 2021, it was cold, and Mr. Dodd talked with Warden Galipeau. He said he "wouldn't be spending thousands of dollars just to heat the dorm up for a few days." ECF 8 at 12. Maintenance Supervisor Adam Liedy did not address the multitude of problems in a timely manner. Neither Warden Galipeau nor Commissioner Carter (who allegedly toured the facility multiple times while the deficiencies existed) took action to remedy the conditions at the prison.

These allegations, when taken as a whole, are troubling. Mr. Dodd will be permitted to proceed against Sgt. Vaughn, Sgt. Dew, and Lt. Bradford (each of whom allegedly manipulated temperature readings) for deliberate indifference to his safety when temperatures fell below acceptable levels, in violation of the Eighth Amendment. Mr. Dodd will also be permitted to proceed against Maintenance Supervisor Adam Liedy, Warden Galipeau, and Commissioner Carter for turning a blind eye to these pervasive

---

[4] "Ankylosing spondylitis is a type of arthritis that causes inflammation in the joints and ligaments of the spine." https://www.niams.nih.gov/health-topics/ankylosing-spondylitis#:~:text=Ankylosing%20spondylitis%20is%20a%20type,the%20spine%20can%20cause%20stiffness. (last visited Oct. 31, 2022).

infrastructure problems. *See Doe v. Purdue Univ.*, 928 F.3d 652, 664 (7th Cir 2019) (Supervisory staff can be held liable for a constitutional violation if they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye."). Additionally, Mr. Dodd will be permitted to proceed against Warden Galipeau in his official capacity for injunctive relief. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) ("[T]he warden . . . is a proper defendant [for] injunctive relief [and is] responsible for ensuring that any injunctive relief is carried out.").

In addition to his claims about the general conditions at the prison, Mr. Dodd asserts several allegations related to the handling of the COVID-19 pandemic. When the COVID-19 pandemic began, Mr. Dodd was 50 years old and housed in a medical unit. Due to his age, medical conditions, and use of an immunosuppressant, Mr. Dodd had a higher risk of complications if he contracted COVID-19 than younger, healthy individuals.

According to the complaint, Governor Eric Holcomb issued a public health emergency on March 6, 2020, and a national emergency was declared on March 13, 2020. By April 5, 2020, Mr. Dodd was feeling sick. He requested a breathing treatment on April 6, 2020; the request was denied.[5] The next day, Mr. Dodd's dorm was placed on quarantine. An inmate from his dorm died on April 14, 2020, and the remaining inmates were tested for COVID-19. The test results were returned on April 16, 2020: all inmates in the dorm tested positive for COVID-19.

---

[5] Mr. Dodd does not indicate how he requested medical care, who responded to his request, or why the request was denied.

A stay-at-home order was issued on April 25, 2020. After the public health emergency and national emergency were declared and the stay-at-home order was issued (ECF 8 at 18), Commissioner Robert Carter, Warden John Galipeau, and Jack Hendrix allegedly allowed busloads of sick inmates into Westville. Those inmates were quarantined in the area above Mr. Dodd's dorm. The two areas shared a ventilation system, so Mr. Dodd thinks this put him at risk of infection. Additionally, Warden Galipeau allegedly permitted one of the inmates who was quarantined to leave the quarantine area daily and interact with others. When Mr. Dodd complained, Patrick Krugar moved the inmate to Mr. Dodd's dorm. Mr. Dodd claims everyone got sick after this, but he also claims he and the other inmates in his dorm tested positive for COVID-19 a couple weeks earlier. Even if (and to be clear, the court takes no position on this) it was deliberately indifferent to Mr. Dodd's safety to allow sick inmates to be transported to Westville, to house those inmates over Mr. Dodd's dorm when the ventilation was not separate, to permit a quarantined inmate to move around the facility, or to allow that inmate to be reassigned to Mr. Dodd's dorm, none of those actions (which Mr. Dodd says happened after the April 25, 2020, stay-at-home order was issued) caused Mr. Dodd to get COVID-19 in early April. Therefore, Mr. Dodd cannot proceed against Commissioner Robert Carter, Warden John Galipeau, Jack Hendrik, or Patrick Krugar on these claims.

Mr. Dodd further alleges that Wexford's staff was unprepared for the pandemic and responded by suspending medical services. Mr. Dodd attributes this policy – which he offers no specifics about - to lack of training, lack of preparation, or being overwhelmed by the pandemic. Thus, inmates were not diagnosed or treated. If an

inmate complained enough, they were quarantined under considerably harsher conditions.[6] A private company performing a state function can be held liable to the same extent as a municipal entity under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012) (*Monell* framework applies to private company providing medical care at correctional facility). But a corporation "cannot be held liable under § 1983 on a *respondeat superior* theory." *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). Rather corporate liability exists only "when execution of a [corporation's] policy or custom . . . inflicts the injury." *Id.* The only medical care that Mr. Dodd claims he was denied was a breathing treatment he requested on April 6, 2020. He does not say why his request was denied or explain the circumstances around his alleged need for a breathing treatment. The court cannot conclude that the denial itself showed deliberate indifference to a serious medical need. Even if it can be inferred that his request was denied due to the suspension of medical services, he has not plausibly alleged that the suspension harmed him. Therefore, Mr. Dodd may not proceed against Wexford.[7]

---

[6] Quarantined inmates could not have any of their property, including food from commissary.

[7] Mr. Dodd also alleges that Wexford had a policy of denying appropriate medical care to line their pockets. He provides no additional details regarding the alleged policy and how it impacted him. As noted by the Seventh Circuit, "administrative convenience and cost may be, in appropriate circumstances, *permissible factors* for correctional systems to consider in making treatment decisions." *Roe v. Elyea*, 631 F.3d 843, 863 (7th Cir. 2011) (emphasis in original). The Constitution is only violated when those factors are considered "*to the exclusion of reasonable medical judgment* about inmate health." *Id.* (emphasis in original). Mr. Dodd's complaint does not allege facts that plausibly suggest that Wexford had a policy of considering cost savings to the exclusion of reasonable medical judgment, or that he was harmed by that policy. *See Bissessur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 602 (7th Cir. 2009). Thus, he cannot proceed on a claim regarding the alleged cost savings policy.

Mr. Dodd next criticizes the prison's response to the pandemic. At one point (Mr. Dodd doesn't provide dates) it appeared to Mr. Dodd that prison staff intended to lock inmates out of the dayroom, isolating them in their wings. Mr. Dodd felt they were being locked away to die. Moreover, Mr. Dodd asserts that he did not get his first "real mask" until April 27, 2020, after inmates started dying and inmates' families started protesting. ECF 8 at 20.

Mr. Dodd forgets that, in the early days of the pandemic, the Center for Disease Control was not recommending that everyone wear masks. The CDC first advised that masks should be worn in public on April 3, 2020. https://www.defense.gov/Spotlights/Coronavirus-DOD-Response/Timeline/ (last visited October 31, 2022). In July 2020, the CDC was still recommending that the public wear *cloth* face masks. CDC calls on Americans to wear masks to prevent COVID-19 spread | CDC Online Newsroom | CDC (last visited October 31, 2022) (the CDC "affirms that cloth face coverings are a critical tool in the fight against COVID-19 that could reduce the spread of the disease, particularly when used universally within communities. There is increasing evidence that cloth face coverings help prevent people who have COVID-19 from spreading the virus to others."). These realities factor into the determination of whether it is reasonable to infer that keeping inmates from congregating in the day room or not immediately providing masks suggest defendants were deliberately indifferent to the risks of COVID-19. Under these circumstances, Mr. Dodd has not plausibly alleged that any defendant was deliberately indifferent to his safety during the early months of the COVID-19 pandemic.

Mr. Dodd further alleges that because medical services were suspended, inmates were unable to see medical personnel to obtain permission to miss work when sick. As a result, inmates had to go to their jobs when they were sick. These sick inmates then spread COVID-19 to other inmates. Mr. Dodd believes Warden Galipeau should be held liable for these workers going to work when sick, but he has not pleaded facts from which it can be plausibly inferred that Warden Galipeau either knew or required sick workers to continue to go to work while medical services were suspended.

Mr. Dodd faults Governor Eric Holcolm for not stressing the dangers of COVID-19 enough to other state offices, like Commissioner Carter's office. He further alleges that Governor Holcomb turned a blind eye to the transferring of prisoners around the state. But he has not pled facts from which it can be plausibly inferred that the Governor would be aware of the details of prisoner movement between facilities or was otherwise deliberately indifferent.

Mr. Dodd believes more should have been done to protect high-risk inmates like himself from contracting COVID-19. That is undoubtedly true. But hindsight is 20/20. The question before the court is not whether more could or should have been done, given what we know now; the question is whether the defendants that Mr. Dodd is suing here were deliberately indifferent to his safety, and whether that indifference resulted in harm to Mr. Dodd. The facts presented in the amended complaint suggests that defendants were managing things during the early stages of the pandemic just like everybody else. Even if it could be said they were negligent or maybe even incompetent, it cannot be inferred that the failure to do more to protect Mr. Dodd between the onset of the

11

pandemic and him becoming ill on April 5, 2020, was the result of deliberate indifference on the part of any defendant named in this lawsuit.

For these reasons, the court:

(1) GRANTS Richard Dodd leave to proceed against Sgt. Vaughn, Sgt. Dew, and Lt. Bradford in their individual capacities for compensatory and punitive damages for deliberate indifference to his safety when temperatures fell below acceptable levels, in violation of the Eighth Amendment;

(2) GRANTS Richard Dodd leave to proceed against Maintenance Supervisor Adam Liedy, Warden John Galipeau, and Commissioner Robert Carter in their individual capacities for compensatory and punitive damages for deliberate indifference to his conditions of confinement, in violation of the Eighth Amendment;

(3) GRANTS Richard Dodd leave to proceed against Warden John Galipeau in his official capacity for injunctive relief in the form of conditions of confinement that are not inconsistent with the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Jack Hendrik, Patrick Krugar, Eric Holcomb, and Wexford Medical;

(6) DIRECTS the clerk, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Sgt. Vaughn, Sgt. Dew, Lt. Bradford, Adam Liedy, John Galipeau, and Robert Carter at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 8);

(7) ORDERS the Indiana Department of Correction to provide the full name, date of birth, and last known home address of any defendant who does not waive service if it has such information; and

(8) ORDERS, under 42 U.S.C. § 1997e(g)(2), Sgt. Vaughn, Sgt. Dew, Lt. Bradford, Adam Liedy, John Galipeau, and Robert Carter to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED.

November 8, 2022  *s/ Damon R. Leichty*
Judge, United States District Court